[Civ. No. 18368. Fourth Dist., Div. One. Oct. 16, 1979.]

ETELVINA RUIZ-CANO, Plaintiff and Respondent, v.
COUNTY OF SAN DIEGO et al., Defendants and Appellants.

COUNSEL

Donald L. Clark, County Counsel, Lloyd M. Harmon, Jr., Chief Deputy County Counsel, and Phillip L. Kossy, Deputy County Counsel, for Defendants and Appellants.

Timothy S. Barker and Charles Wolfinger for Plaintiff and Respondent.

OPINION

**FOCHT, J.\***—This is an appeal from a judgment granting plaintiff Etelvina Ruiz-Cano a peremptory writ of mandate ordering certain officials of San Diego County to reinstate plaintiff to a previously held employment position with the county, together with associated benefits, and awarding her back pay with interest.

Plaintiff was hired by the county on August 24, 1977, as a mental health assistant in a program known as the "Battered Women's Project." Pursuant to certain provisions of the San Diego County Charter then in existence, plaintiff was informed she would have to file proof of

---

\*Assigned by the Chairperson of the Judicial Council.

United States citizenship or of having filed a petition for naturalization in order to continue to receive compensation. Upon her failure to do so she was given notice of termination on March 14, 1978.

Sections 41 and 89 of the county charter at the period in question contained the provisions with which this appeal is concerned.[1] Section 41 provided in relevant part as follows: "It shall be unlawful to knowingly employ, engage or appoint any person to serve in the public service who is not a native or fully naturalized citizen of the United States;..." Section 89 provided in relevant part: "No person shall be certified to any position in the classified civil service, or employed or appointed to any position or office in the unclassified service, unless such person is a native-born or fully naturalized citizen of the United States, provided however, that the prohibitions of this section shall not apply...(c) to the employment of any person who has declared his intention to become a citizen of the United States.

"...The term 'Person who has declared his intention to become a citizen' shall not include any person who fails to secure his certificate of naturalization within six months after the time he is entitled by law to secure the same."

Plaintiff was lawfully admitted to the United States as a permanent resident in 1944 at the age of four. She has been a resident of San Diego County for the past 33 years.

The trial court's decision was based upon the finding that plaintiff was terminated on the ground that she was not a United States citizen and its conclusion that the charter provisions in question violated the equal protection clauses of the Constitutions of California and the United States.

For many years the Supreme Courts of the United States and California upheld the right of state and local governments to enforce indiscriminate employment bans on resident aliens. (*Heim* v. *McCall* (1915) 239 U.S. 175 [60 L.Ed. 206, 36 S.Ct. 78]; *City of Pasadena* v. *Charleville* (1932) 215 Cal. 384 [10 P.2d 745].)

---

[1] The present county charter which became effective August 21, 1978, does not contain sections 41 or 89 of the former charter, nor are similar provisions found elsewhere in the new charter.

The turn of the tide in the judicial approval of such restrictions was signaled by the case of *Takahashi* v. *Fish Comm'n* (1948) 334 U.S. 410 [92 L.Ed. 1478, 68 S.Ct. 1138]. In that case a California statute was declared invalid that prohibited the issuance of commercial fishing licenses to aliens not eligible for citizenship. The Supreme Court stated (334 U.S. at p. 420 [92 L.Ed. at p. 1487]) "The Fourteenth Amendment and the laws adopted under its authority thus embody a general policy that all persons lawfully in this country shall abide 'in any state' on an equality of legal privileges with all citizens under non-discriminatory laws."

Relying heavily on the *Takahashi* case, the California Supreme Court in *Purdy & Fitzpatrick* v. *State of California* (1969) 71 Cal.2d 566 [79 Cal.Rptr. 77, 456 P.2d 645, 38 A.L.R.3d 1194], overruled *City of Pasadena* v. *Charleville, supra,* and declared unconstitutional a section of the California Labor Code which basically prohibited the employment of aliens on public works.

Thereafter, in *Sugarman* v. *Dougall* (1973) 413 U.S. 634 [37 L.Ed.2d 853, 93 S.Ct. 2842], the United States Supreme Court struck down a New York City civil service law barring noncitizens of the United States from a competitive civil service class. It was held that the statute violated the equal protection clause of the Constitution of the United States in view of its breadth and lack of precision. However, the court stated in 413 U.S. at pages 646-647 [37 L.Ed.2d at page 862]: "While we rule that § 53 is unconstitutional, we do not hold that, on the basis of an individualized determination, an alien may not be refused, or discharged from, public employment, even on the basis of noncitizenship, if the refusal to hire, or the discharge, rests on legitimate state interests that relate to qualifications for a particular position or to the characteristics of the employee. We hold only that a flat ban on the employment of aliens in positions that have little, if any, relation to a State's legitimate interest, cannot withstand scrutiny under the Fourteenth Amendment."

The United States Supreme Court has continued to uphold statutes excluding resident aliens from limited classes of employment or office where a compelling state interest can be demonstrated. *In Foley* v. *Connelie* (1978) 435 U.S. 291 [55 L.Ed.2d 287, 98 S.Ct. 1067], it was held that a New York statute excluding aliens from the state police force did not violate the equal protection clause of the Fourteenth Amendment. The court said (435 U.S. at p. 300 [55 L.Ed.2d at p. 295]): "In the en-

forcement and execution of the laws the police function is one where citizenship bears a rational relationship to the special demands of the particular position. A State may, therefore, consonant with the Constitution, confine the performance of this important public responsibility to citizens of the United States." The Supreme Court also recognized as permissible restrictions on aliens holding positions in which the holders thereof are performing governmental functions, stating (435 U.S. at p. 297 [55 L.Ed.2d at p. 293]): ". . .the right to govern is reserved to citizens."

In *Ambach* v. *Norwick* (1979) 441 U.S. 68 [60 L.Ed.2d 49, 99 S.Ct. 1589] a New York statute forbidding certification as a public school teacher any person not a United States citizen was upheld. The Supreme Court held that a citizenship requirement applicable to teaching bears a rational relationship to a legitimate state interest.

■ The ban on alien employment contained in the charter provisions under consideration in the case at bench is indiscriminate and cannot be upheld under the special public interest or governmental function exceptions recognized by the United States Supreme Court. The restriction is analogous to the ban struck down in *Sugarman* v. *Dougall, supra,* 413 U.S. 634. Defendants seek to distinguish the *Sugarman* case on the ground it was concerned with only one particular class of classified civil service and other levels were not subject to the same restriction. No such distinction is valid. The holding in *Sugarman* was based upon the broad, indiscriminate nature of the ban directed at the class in question which covered a wide range of positions. The charter provisions in question herein are of such breadth that a stronger basis exists for declaring their invalidity than in the *Sugarman* case.

We have considered other contentions advanced by defendants wherein they seek to avoid the impact of the constitutional limitations now given solid recognition by the Supreme Courts of the United States and California. We find them to be without merit.

In view of our affirmance of the judgment of the trial court for the reasons stated, we do not address ourselves to the plaintiff's additional argument regarding federal preemption in the field of alien admission.

Judgment affirmed.

Brown (Gerald), P. J., and Cologne, J., concurred.